IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | | |
|---|---|---|
| COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS, a Wisconsin Cooperative,<br><br>       Plaintiff,<br><br>    v.<br><br>NOBLE DAIRY, an Oregon business entity of unknown form; JERRY NOBLE, individually, as trustee for the Jerry Noble Trust, and doing business as Noble Dairy; SANDRA NOBLE, individually, as trustee for the Jerry Noble Trust, and doing business as Noble Dairy; ORGANIC WEST MILK, INC., a California Corporation; GAGE STUEVE; LEONARD C. VANDENBURG; DOES 1-50, inclusive,<br><br>       Defendants. | | 1:15-cv-00187-PA<br><br>**ORDER** |

1 - ORDER

**PANNER, District Judge:**

This matter comes before the Court on Plaintiff Cooperative Regions of Organic Producer Pools' Motion for a Preliminary Injunction (#6). Plaintiff seeks to continue the temporary injunction already in place requiring Defendants Jerry Noble, Sandra Noble, and Noble Dairy (collectively "the Noble Dairy Defendants") to deliver all of their organic milk products to Plaintiff and forbidding them from selling organic milk products to any other parties. Plaintiff's motion is GRANTED.

### Background

Plaintiff in this action is a large agricultural cooperative based in Wisconsin. As a cooperative, Plaintiff assembles, packs, processes, and sells the produce of its member farms. A large part of Plaintiff's operations involve the marketing and distribution of organic milk from its member farms.

The demand for organic milk has increased substantially in recent years, but the process of turning an existing dairy farm into an organic dairy farm is both expensive and time-consuming. As a consequence, the supply of organic milk is limited relative to the growing demand.

The Noble Dairy Defendants own and operate a large organic dairy farm in Josephine County, Oregon. On July 22, 2014, the Noble Dairy Defendants signed a Letter of Intent indicating their interest in becoming one of Plaintiff's member farms. On August 14, 2014, the Noble Dairy Defendants signed a Dairy Member Agreement ("Member Agreement") with Plaintiff.

2 - ORDER

Under the terms of the Member Agreement, the Noble Dairy Defendants "agree[d] to be bound by both the Cooperative bylaws and this agreement." The Noble Dairy Defendants "pledge[d] all organic dairy production" to Plaintiff and appointed Plaintiff "as its exclusive agent in the marketing of organic milk/dairy products." In return, Plaintiff pledged to pay the Noble Dairy Defendants "for their certified organic milk according to the rates and programs established by the Dairy Executive Committee and the Board of Directors for the Member's region."

The Member Agreement was to be "in effect continuously from date hereof," subject to termination by either party at any time by giving 180 days notice in writing. The Noble Dairy Defendants were to begin providing organic milk to Plaintiff on February 1, 2015.

In early January 2015, the Noble Dairy Defendants began to negotiate with Defendant Organic West Milk, Inc. ("Organic West"), a California corporation that competes directly with Plaintiff in the organic milk market. On January 12, 2015, the Noble Dairy Defendants entered into a contract with Organic West promising to provide all of Noble Dairy Defendants' organic milk to Organic West. Under the terms of the January 12 contract, the Noble Dairy Defendants were to begin supplying organic milk to Organic West on February 1, 2015.

On January 22, 2015, the Noble Dairy Defendants notified Plaintiff by letter that they were terminating the Member Agreement effective immediately. The letter indicated that the Noble Dairy Defendants were unaware that the Member Agreement was

3 - ORDER

not a letter of intent.

On January 30, 2015, Plaintiff sent a cease-and-desist letter to Organic West, informing it of Plaintiff's Member Agreement with the Noble Dairy Defendants and demanding that Organic West refrain from purchasing organic milk from the Noble Dairy Defendants. Plaintiff also sent the Noble Dairy Defendants a formal letter on January 30, 2015, stating its position that the August 14 Member Agreement was binding and that the Noble Dairy Defendants could not withdraw from the cooperative without 180 days notice. Plaintiff indicated that it intended to send a truck to pick up the first shipment of organic milk from Noble Dairy on February 1, 2015.

On February 1, 2015, Plaintiff sent a milk truck to the Noble Dairy Defendants. Plaintiff's milk truck was turned away and the Noble Dairy Defendants delivered their organic milk to Organic West. On February 2, 2015, Plaintiff filed this action (#1). On February 4, 2015, Plaintiff filed an Ex Parte Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (#6). On February 5, 2015, I granted a Temporary Restraining Order requiring the Noble Dairy Defendants to deliver their entire organic milk production to Plaintiff pursuant to the Member Agreement.

## Legal Standard

The Ninth Circuit has laid out the factors used to determine whether a preliminary injunction should be granted:

> The factors we traditionally consider in determining whether to grant a preliminary injunction in this circuit are (1) the likelihood of plaintiff's success on

4 - ORDER

the merits; (2) the possibility of plaintiff's suffering irreparable injury if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases whether the public interest will be advanced by the provision of preliminary relief. Dollar Rent A Car of Wash., Inc. v. Travelers Indemnity Co., 774 F.2d 1371, 1374 (9th Cir. 1985). To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor. Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 314-315 (9th Cir. 1978), *cert dismissed*, 441 U.S. 937, 99 S. Ct. 2065, 20 L. Ed. 2d 667 (1979). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir. 1985).

United States v. Odessa Union Warehouse, 833 F.2d 172, 174 (9th Cir. 1987).

Thus, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011)(citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008)).

The moving party must show, at an irreducible minimum, that they have a fair chance of success on the merits. Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1319 (9th Cir. 1994)(quoting Martin v. Int'l Olympic Comm., 740 F.2d 670, 674-75 (9th Cir. 1994)); Comm. Of Cent. Am. Refugees v. INS, 795 F.2d 1434, 1437 (9th Cir. 1986).

5 - ORDER

## Discussion

Plaintiff seeks an injunction requiring the Noble Dairy Defendants to comply with the terms of the Member Agreement by delivering their entire organic milk production to Plaintiff and refraining from selling their organic milk to any other party, including Organic West. Such an injunction would last until August 4, 2015.[1]

## I. Likelihood of Success on the Merits

The Ninth Circuit has adopted an analytical approach to the "likelihood of success" factor which considered whether "serious questions going to the merits [are] raised and the balance of hardships tips sharply in plaintiff's favor." Cottrell, 632 F.3d at 1131. This test is also referred to as the "serious questions" test. Id. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the Winter test are met." Id. at 1132.

Under Oregon law, a claim for breach of contract requires that the plaintiff plead and prove the existence of a contract, its relevant terms, the plaintiff's full performance and lack of breach, and the defendant's breach resulting in damage to plaintiff. Slover v. Or. State Bd. Of Clinical Soc. Workers, 144 Or. App. 565, 570 (1996).

---

[1] August 4, 2015, is 180 days after the date of the Temporary Restraining Order issued in this case (#12). I accept Plaintiff's argument that the 180 notice period should not begin to run until the date of the Noble Dairy Defendant's actual compliance with the Member Agreement, as opposed to the date of their notice of termination, January 22, 2015.

6 - ORDER

Plaintiff contends that it has shown a likelihood of success on the merits based on the terms of the August 14 Member Agreement signed by the Noble Dairy Defendants and the undisputed fact that the Noble Dairy Defendants refused to deliver organic milk to Plaintiff until ordered to do so by this Court.

Defendants do not dispute that the Noble Dairy Defendants signed the Member Agreement. Rather, Defendants contend that Larry Hansen, Plaintiff's sales representative, told the Noble Dairy Defendants that the Member Agreement was not binding until the Noble Dairy Defendants made their first delivery of milk to Plaintiff. Defendants characterize the Member Agreement as a letter of intent, rather than a binding contract.

I do not find Defendants' arguments persuasive. First, I note that the Noble Dairy Defendants signed a Letter of Intent with Plaintiff in July 2014. That document was clearly labeled as a letter of intent and contained language limiting its binding power. The subsequent Member Agreement, by contrast, states that the signatory agrees to be bound by Plaintiff's bylaws and the agreement itself. It lists the rights and obligations of both parties. The plain language of the Member Agreement indicates that it constituted a binding contract. It is not necessary at this stage to determine what, if any, representations were made by Larry Hansen to the Noble Dairy Defendants or what significance those representations might have for the ultimate enforceability of the Member Agreement.

The Noble Dairy Defendants separately argue that the Member Agreement did not contain pricing information for the organic milk

7 - ORDER

and that, as such, the Member Agreement lacked an essential term. I note, however, that the Member Agreement does contain a term concerning the price to be paid for the organic milk, which explains how the price will be set.

Based on the record, I conclude that Plaintiff has demonstrated a sufficient likelihood of success on the merits to justify the issuance of a preliminary injunction.

**II. Irreparable Harm**

A plaintiff seeking a preliminary injunction must show a likelihood that the party will suffer irreparable harm in the absence of preliminary relief. Winter, 555 U.S. at 20. Typically, monetary harm does not constitute irreparable harm. Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980). The Ninth Circuit has recognized, however, that "intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991); see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001)(holding that, in the context of trademark cases, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

In this case, Plaintiff has provided a declaration of Louise Hemstead, Plaintiff's Chief Operating Officer. Hemstead's responsibilities include direction and oversight of Plaintiff's supply chain. Hemstead's Declaration explains that Plaintiff used Noble Dairy's production figures in calculating its available

8 - ORDER

supply of organic milk for the coming months. Plaintiff's forecasted supply is, in turn, used to make commitments to third party customers. Plaintiff argues that if the Noble Dairy Defendants are allowed to refuse to delivery organic milk as required by the Member Agreement, Plaintiff will be unable to meet its "downstream" commitments. Failure to meet its commitments would result in the loss of customer goodwill and future business opportunities as customers look elsewhere for more reliable sources of organic milk.

Plaintiff also asserts that, due to the limited supply of organic milk relative to demand and the constraints of its status as a cooperative, it is unable to procure replacement product to cover the loss of the Noble Dairy milk.

Defendants contend that the milk Plaintiff has received from Noble Dairy since the February 5 TRO has been sent by Plaintiff to be processed into powdered milk and cheese. Defendants contend Plaintiff's use of the Noble Dairy milk for cheese and powdered milk indicates that the milk is "excess" product and that, as the product is excess, Plaintiff will not be irreparably harmed by its loss.

The Hemstead Declaration provides a plausible explanation for Plaintiff's decision to use Noble Dairy's milk for cheese and powdered milk, however. According to the Hemstead Declaration, Plaintiff's 2015 milk plan called for a large portion of Northwest milk to be made into less perishable products like cheese, butter, and powdered milk. Those less-perishable products can then be

shipped to other regions of the country, freeing Plaintiff to use the milk produced by member farms in those regions for bottling. In light of the Hemstead Declaration, I conclude that Plaintiff's decision to allocate the Noble Dairy milk to cheese and powdered milk production does not undermine Plaintiff's showing of irreparable harm.

I conclude that Plaintiff has made a sufficient showing of irreparable harm to justify the issuance of a preliminary injunction.

### III. Balance of Equities

In considering a motion for a preliminary injunction, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, AK, 480 U.S. 531, 542 (1987); see also Univ. of Hawai'i Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1108 (9th Cir. 1999)("To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of harm caused by not issuing it.").

Although I recognize that under the terms of the injunction, Defendants will be deprived of the benefit of their January 12 contract, that deprivation will only endure for the limited period of this injunction. The harm to the Noble Dairy Defendants is also limited by the fact that Plaintiff will continue to pay the Noble Dairy Defendants for the organic milk a the rate provided

10- ORDER

for by the Member Agreement.[2]

I conclude that the balance of equities tips in favor of an injunction.

## IV. Public Interest

Generally speaking, the public has an interest in enforcement of valid contracts to which the parties have voluntarily agreed. Giftango, LLC v. Rosenberg, 925 F. Supp. 2d 1128, 1141 (D. Or. 2013). The Oregon legislature has enacted laws for the express purpose of protecting cooperatives in the event of the breach or threatened breach of cooperative contracts. ORS 62.365. The Oregon Supreme Court has also recognized the importance of enforcing agricultural cooperative member contracts:

> [An agricultural cooperative's] success, therefore, and the benefits to be derived by the members thereof, is wholly dependent upon the performance, by all of the contracting parties, with the terms and conditions of their respective contracts. In order to carry out the objects and purposes for which it was organized, it is necessary for the association to enter into contracts for the disposal of the products of its members. Before it can safely make such contracts, it must be assured that it will obtain the products contracted for. It must also be able to form a reasonable estimate, in advance, of the amount of products which will be grown on the acreage stipulated, and maintain a sufficient organization and force to prepare the same for market. It is also necessary to secure the capital or credit required to discharge its obligations to the growers and to conduct and carry on its business. The perishable nature of the products handled, the uncertainty of the market conditions and prices, its inability to buy these products from nonmembers, and the limited time in which its business for each season must be conducted and

---

[2] The record indicates that Plaintiff's projections were that it would pay its member farms $35.99 per hundredweight of organic milk. Defendants' January 12 contract contemplated a rate of $36.60 per hundredweight.

11 - ORDER

> completed, makes it essential that each member of the association should perform his contract according to its terms. From these considerations, it must be obvious that an action at law to recover the stipulated damages would not afford to the plaintiff a full, adequate, and complete remedy for the wrong done to the association, and indirectly to its members by a member's breach of his contract.

Or. Growers' Co-op. Ass'n v. Lentz, 107 Or. 561, 580-81 (1923).

In light of the steps taken by the Oregon legislature to protect and support agricultural cooperatives, combined with the general public interest in the enforcement of valid contracts, I conclude that an injunction is in the public interest.

**V. ORS 62.365**

Plaintiff argues that it is entitled to an injunction pursuant to ORS 62.365, which provides that:

> In the event of a breach or threatened breach of a cooperative contract authorized by ORS 62.355, the cooperative is entitled to an injunction to prevent the breach or any further breach thereof, and to a judgment of specific performance thereof. Upon filing of a verified complaint showing the breach or threatened breach, and upon filing a sufficient bond, the cooperative is entitled to a temporary restraining order.

ORS 62.365(1).

Defendants contend that Federal Rule of Civil Procedure 65 and not ORS 62.365 is the appropriate standard for the issuance of a preliminary injunction in this case. It is not necessary to resolve the issue of whether ORS 62.365 applies, as I have concluded that Plaintiff is entitled to a preliminary injunction under Rule 65.

12 - ORDER

## Conclusion

Plaintiff's Motion for a Preliminary Injunction (#6) is GRANTED. The injunction previously ordered by this Court (#12) on February 5, 2015, is continued on the same terms through August 4, 2015. The Noble Dairy Defendants are hereby enjoined from selling organic milk to any third parties, including Defendant Organic West Milk, Inc. The Noble Dairy Defendants are hereby required to deliver all the organic milk they produce to Plaintiff, pursuant to the terms of the August 14, 2014, Marketing Agreement between the parties. Plaintiff shall pay the Noble Dairy Defendants for the organic milk as provided by the Marketing Agreement. As security, Plaintiff shall maintain the bond previously entered in this case.

IT IS SO ORDERED.

DATED this **23** day of February, 2015.

_Owen M. Panner_
OWEN M. PANNER
U.S. DISTRICT JUDGE

13- ORDER